## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**WADE B. SATTERFIELD,**

     **Plaintiff,**

**v.**               **Civil Action No. 4:20-cv-00005**

**CITY OF CHESAPEAKE,**
**VIRGINIA,**

     **Defendant.**

## OPINION AND ORDER

In this employment discrimination and retaliation suit, the City of Chesapeake ("Defendant" or "the City") moved for summary judgment, (ECF No. 53), against Plaintiff, Wade B. Satterfield ("Satterfield" or "Plaintiff"), a former police officer with the Chesapeake Police Department. The City argues that the evidence is insufficient as a matter of law to permit a reasonable juror to conclude that Satterfield was terminated because of his race or in retaliation for engaging in protected activity. Def.'s Mem. Supp. M. Summ. J. (ECF No. 54, at 1) ("Def.'s Mem."). Specifically, the City argues that Satterfield did not exhaust his administrative remedies, voluntarily resigned from employment, and could no longer perform his duties as a police officer due to substantiated claims he had lied under oath. Id. Satterfield opposed the motion, (ECF No. 56), and the City replied, (ECF No. 57). Although the City requested oral argument, I find the issues adequately presented in the briefs and oral argument would not aid the decisional process. E.D. Va. Loc. R. 7(J); Fed. R. Civ. P. 78(b).

Both parties have consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 45). After reviewing the

1

parties' motions and the exhibits in the summary judgment record, I conclude that Satterfield cannot meet his burden to establish a <u>prima facie</u> case of employment discrimination or retaliation. Accordingly, for the reasons explained in detail below, the court GRANTS Defendant's Motion for Summary Judgment (ECF No. 53).

## I.      BACKGROUND

Satterfield is a retired African American senior police officer with the Operations Bureau of the Chesapeake Police Department. Wright Decl. (ECF No. 54-1, ¶ 5). Originally hired by the City in 1989, Satterfield started as a police officer trainee in 2000. <u>Id.</u>; Pl's Opp'n Ex. E (ECF No. 56-5, at 1). He separated from the City in 2019. Wright Decl. (ECF No. 54-1, ¶ 5). On January 9, 2020, Satterfield filed this action asserting wrongful or constructive termination from employment based, in whole or in part, upon his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, <u>et seq.</u>, and the Civil Rights Act of 1996, as amended, by the Civil Rights Restoration Act of 1991, 42 U.S.C. § 1981. Sec. Am. Compl. (ECF No. 41).

### A.      2016 Sham Affidavit

Related are Satterfield's claims from an earlier lawsuit. In 2016, Satterfield sued the City and various City employees under Title VII of the Civil Rights Act of 1964. <u>See</u> <u>Satterfield v. City of Chesapeake et al.</u>, No. 2:16-cv-665 (E.D. Va. 2018). His 2016 action alleged discrimination arising out of the City's investigation of him after he used inappropriate and threatening language in text messages intended to "flush out" a suspect. <u>Id.</u> (ECF No. 89, at 2). A key dispute in Satterfield's 2016 claim was when he first complained of discrimination following the investigation. <u>Id.</u> at 4. Throughout the litigation, Satterfield identified April 2015 as the earliest date that he complained. <u>Id.</u> The City later moved for summary judgment relying on this

date, which was after the investigation into his threatening messages was underway. Id. (ECF No. 71).   Satterfield opposed summary judgment and submitted an affidavit (the "2016 Sham Affidavit") claiming for the first time that he had complained of discrimination earlier in March 2015. Id. (ECF No. 89, at 7).

The court found that Satterfield's affidavit was a sham, gave the affidavit no weight, and granted summary judgment in the defendants' favor. Id. at 7-8.  The court noted that there was a "bona fide inconsistency" in Satterfield's sworn testimony, and that the 2016 Sham Affidavit was an "eleventh hour" attempt to "avoid summary judgment by revising history despite . . . the uncontroverted evidence." Id. (ECF No. 76, at 28).  The court ultimately sanctioned Satterfield for the 2016 Sham Affidavit, rejecting his explanations for the change in position and concluding the affidavit was submitted in bad faith. Id. (ECF No. 89).

## B.      The Giglio/Brady List

Constitutional officers have a duty under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), to provide criminal defendants with potentially exculpatory material, including impeachment information.  To fulfill that duty, the Chesapeake Commonwealth's Attorney, Nancy Parr ("CCA Parr"), uses the Office's case management system to flag officers with established credibility issues. See Parr Dep. (ECF No. 54-2, at 10-11).  This flagging system is colloquially known as the "Giglio/Brady List." Id. at 10.  Only CCA Parr can place officers on the Giglio/Brady List. Id. at 37-39.  The Office of the Commonwealth's Attorney makes no recommendation regarding an officer's continued employment after placement on the Giglio/Brady List, but only tells the Chesapeake Chief of Police whether prosecutors could "use a person as a witness in any future cases." Id. at 34.

3

The City considers a police officer's veracity to be an essential job function and immediately terminates officers who lie on official documents or in official proceedings. Wright Decl. (ECF No. 54-1, ¶¶ 24-25). Chief of Police for the City of Chesapeake, Kelvin L. Wright ("Chief Wright"), has "reported all police officers with substantiated charges of untruthfulness" to the Office of the Commonwealth's Attorney. Id. ¶ 27. Only two officers on the Giglio/Brady List are currently permitted to testify: Officer Frank Chappell and Officer Greg Prieur. See Parr Dep. (ECF No. 54-2, at 21-22). The Commonwealth's Attorney deems "their behavior . . . more of a misunderstanding of the law and a training issue, not a veracity issue," and placed them on the Giglio/Brady List only "out of an abundance of caution." Id. at 22.

Because of the 2016 Sham Affidavit and subsequent investigation, Satterfield was placed on the Giglio/Brady List. Id. at 28, 47-48. Chief Wright initially reported Satterfield to CCA Parr. Wright Decl. (ECF No. 54-1, ¶ 38). CCA Parr also independently reviewed the court's opinion condemning the 2016 Sham Affidavit. Parr Dep. (ECF No. 54-2, at 47-48). CCA Parr believed that the Office would be obligated to provide copies of the court's order condemning the 2016 Sham Affidavit to defense attorneys as potentially exculpatory material if Satterfield acted as a witness in any cases. Id. at 31. In January 2019, CCA Parr "advised . . . [that Satterfield] not be used as a witness." Id.

C.   **Satterfield's Resignation from the Chesapeake Police Department**

After the 2016 Sham Affidavit, the City investigated Satterfield internally, during which Satterfield denied ever seeing the affidavit. See Wright Decl. (ECF No. 54-1, ¶¶ 36, 41). At the conclusion of the investigation, the City "agreed that the charges of untruthfulness should be substantiated" and determined to terminate Satterfield. Id. ¶ 43. On February 9, 2019, Satterfield received a Notice of Charges ("NOC"), which "outlines the behavior or actions for which sanctions

4

will be taken." Wright Dep. (ECF No. 54-11, at 17, 26); Wright Decl. (ECF No. 54-1, ¶ 44).

Satterfield responded to the NOC, but he failed to address his prior contention that he had not seen

the 2016 Sham Affidavit before signing it. Wright Decl. (ECF No. 54-1, ¶¶ 45-46); see also Pl.'s

Opp'n Ex. B (ECF No. 56-2, at 1) ("Your written correspondence . . . offered no new information

and did not provide a plausible explanation."). Satterfield had arranged for his signature on the

2016 Sham Affidavit to be notarized. Wright Decl. (ECF No. 54-1, ¶ 36).

On February 22, 2019, Chief Wright drafted a Notice of Disciplinary Action ("NDA") to

advise Satterfield that he would be terminated for untruthfulness in violation of policy. Id. ¶ 47.

Service of the NDA is part of the City's official termination procedure.[1] Myers Aff. (ECF No. 54-

4, ¶ 5). Before termination, though, Chief Wright frequently "permit[s] the employee to resign or

retire in lieu of termination." Id. ¶ 6; see also Wright Decl. (ECF No. 54-1, ¶ 48). Chief Wright

planned to offer that opportunity to Satterfield. Wright Decl. (ECF No. 54-1, ¶ 48). However, on

February 28, 2019, Satterfield executed retirement paperwork. See Def.'s Mem. Ex. D (ECF No.

54-4, at 25); see also Satterfield Dep. (ECF No. 54-3, at 16); Wright Decl. (ECF No. 54-1, ¶ 51).

Satterfield's official status is "retired pending discipline." Satterfield Dep. (ECF No. 54-3, at 18);

Wright Decl. (ECF No. 54-1, ¶ 51). Employees only have one official separation status. Myers

Aff. (ECF No. 54-4, ¶ 6). Satterfield reported his status as "retired" on his Gates County

employment application submitted shortly before retirement.[2] Def.'s Mem. Ex. G (ECF No. 54-

7, at 6).

---

[1] Parties dispute whether Chief Wright served the NDA. Chief Wright asserts the NDA was not issued. Wright Decl. (ECF No. 54-1, ¶ 47). Satterfield contends that NDA "was mailed to him via certified mail" and that he did not "receive any notification that the [NDA] was void." Pl.'s Opp'n (ECF No. 56, at 17-18). The City's certificate of mailing shows delivery of the NDA on March 9, 2019, Def.'s Mem. Ex. D (ECF No. 54-4, at 23), over a week after Plaintiff executed retirement paperwork on February 28, 2019, Def.'s Mem. Ex. D (ECF No. 54-4, at 25).

[2] Satterfield attempts to distinguish the application because it is dated February 21, 2019, before Satterfield executed retirement paperwork. Pl.'s Opp'n (ECF No. 56, at 12). However, Satterfield applied to the Gates County Sheriff's

Prior to Satterfield's resignation, the City had disciplined Satterfield four separate times. Satterfield Dep. (ECF No. 54-3, at 25-27) (admitting discipline events occurring between 2015 and 2018). Discipline was rendered for substantiated allegations of conduct unbecoming, failure to follow operational procedures, wearable camera violations, and a preventable police vehicle accident. Def.'s Mem. Ex. I (ECF No. 54-9). Satterfield has also admitted that his working conditions since the 2016 Sham Affidavit were not "unpleasant" or "difficult" and that he socialized with his coworkers up until the COVID-19 pandemic. Satterfield Dep. (ECF No. 54-3, at 68-69).

## D.    Satterfield's Claims of Discrimination and Retaliation

Satterfield filed this lawsuit on January 9, 2020, alleging one count of discrimination and one count of retaliation. Compl. (ECF No. 1). After Plaintiff amended his complaint, the City moved to dismiss it for failure to state a claim. (ECF No. 20). U.S. District Judge Arenda L. Wright Allen dismissed Satterfield's claim for retaliation but denied the City's motion on Satterfield's race discrimination claim. (ECF No. 30). With leave of court, Plaintiff then amended his complaint a second time, (ECF No. 41), which the City answered, (ECF No. 42). In his Second Amended Complaint, Satterfield reasserted both his discrimination and retaliation claims. (ECF No. 41). On May 14, 2021, the parties waived their right to proceed before a United States District Judge and consented to have the undersigned conduct all proceedings. (ECF No. 45).

On August 30, 2021, the City moved for summary judgment. (ECF No. 53). The City argues that Satterfield (1) did not exhaust his administrative remedies on his race discrimination claim because he failed to adequately identify this basis in his administrative complaint; (2) cannot

---

Office after receiving the NOC. See Wright Decl. (ECF No. 54-1, ¶ 44). Furthermore, the fact that Satterfield applied for another position and listed "retired" on the application supports his retirement status, even considering the date.

prove discrimination because he was not performing satisfactorily prior to separation, he resigned from employment, and all named comparators were not similarly dishonest; and (3) cannot prove retaliation because no protected activity caused the retaliation and because Satterfield resigned. Def.'s Mem. (ECF No. 54).  Satterfield opposed summary judgment on September 13, 2021, arguing that (1) he exhausted his discrimination claim because his administrative complaint identified race in the narrative; (2) he can prove racial discrimination because his job performance was satisfactory, and he was constructively discharged; and (3) he can prove retaliation because the City engaged in a pattern of retaliatory conduct creating causation.  Pl.'s Opp'n (ECF No. 56). The City replied on September 20, 2021.  Def.'s Reply (ECF No. 57).  Defendant's motion is now properly before the court.

## II.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  "A material fact is one 'that might affect the outcome of the suit under the governing law.'  A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25.  When the moving party has met its burden to show that the evidence is insufficient to support the

nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson, 477 U.S. at 252. Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks omitted).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III.    SECTION 1981 and TITLE VII

The required elements of employment discrimination are the same under Title VII and Section 1981. Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285-86 (1985); see also Demuren v. Old Dominion Univ., 33 F. Supp. 2d 469, 478 (1999) ("The burden of proof on a plaintiff in an employment discrimination case is the same for claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.") (citations omitted). Satterfield has brought his claim under both Title VII and Section 1981. Sec. Am. Compl. (ECF No. 41). Therefore, the court applies the parties' arguments equally to both claims.

## IV.   DISCUSSION

**A.    Satterfield has exhausted his administrative remedies because his EEOC charge adequately placed the City on notice of his racial discrimination claims.**

The City alleges that Satterfield did not sufficiently exhaust his administrative remedies in his complaint to the Equal Employment Opportunity Commission ("EEOC") because he only identified retaliation, and not race, as the basis of discrimination. See Def.'s Mem. (ECF No. 54, at 19-21). Before filing a Title VII suit, a plaintiff must exhaust administrative remedies by filing a timely charge with the EEOC. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623-24 (2007) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)) (superseded by statute on other grounds). The EEOC allegations limit the scope of subsequent judicial proceedings. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996) (citing King v. Seaboard Coast Line R.R., F.2d 581, 583 (4th Cir. 1976)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. at 963 (citing King, F.2d at 583). EEOC allegations are construed liberally. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013).

In evaluating the scope of the plaintiff's allegations, courts consider the entire EEOC charge form. The EEOC charge form asks complainants to identify, via checked boxes, the source of their complaints (e.g., race, retaliation). See Mercer v. PHH Corp., 641 Fed. App'x 233, 237 (4th Cir. 2016). Satterfield only checked the "retaliation" box, leaving the "race" box unchecked. Pl.'s Opp'n Ex. D (ECF No. 56-4, at 1). However, the Fourth Circuit has specifically held that failure to check a certain box "is not dispositive" and "the absence of a checked box is only one factor in [the court's] analysis." Id. at 238-39. Rather, courts will give greater weight to the narrative portion of the EEOC form. Id. at 239 (designating the narrative portion as "more

important[]"). The narrative portion of Satterfield's EEOC charge form adequately addresses race discrimination. Pl.'s Opp'n Ex. D (ECF No. 56-4).  Satterfield reported that he "filed a complaint with the EEOC due to disparate treatment based on [his] race (black)" and that he had "been subjected to retaliation through discharge for protesting racial discrimination." Id. (emphasis added).  Satterfield thus referred to racial discrimination twice on the face of the form. See id.

Further, in denying the City's motion to dismiss Satterfield's First Amended Complaint, this court already held that Satterfield's narrative sufficiently placed the City on notice of his race-based claims.   Order (ECF No. 30, at 12-15) ("[T]he race discrimination claim is raised adequately.").  In addition to finding that "Satterfield explicitly raised race discrimination in the narrative section of the EEOC charge," the court relied heavily on Plaintiff's retaliation claim, noting that Plaintiff's "check box relates back to his discrimination claim because if not for his allegation of race discrimination, he would not raise a retaliation claim." Id. at 13, 15.  The court further observed that "[e]ven if race discrimination claims were not raised in the EEOC Charge, such claims reasonably can be expected to follow and relate back to the retaliation claim." Id. at 15.  Discovery did not measurably affect the question of Plaintiff's exhaustion.

In its motion for summary judgment, the City alleges that Satterfield's Second Amended Complaint, filed after the court denied dismissal of Satterfield's race discrimination claim in the First Amended Complaint, "references new timeframes, actors, and discriminatory conduct [other] than what is contained in Satterfield's charge" and "makes absolutely no reference to white police officers and does not claim that he was treated differently because of his race." Def.'s Mem. (ECF No. 54, at 21).  However, Satterfield's EEOC rebuttal statement states that "[t]here are white officers who have been put on the Brady list, but they still have a job," and names three comparators.  Pl.'s Opp'n Ex. D (ECF No. 56-4, at 19) (emphasis added); see also id. at 11

10

(referring to comparators as "all white males").  The rebuttal statement also complained that "most detectives violated operational procedures in the same areas I did but were not harassed and written up as I was, <u>who was the only African American at the time</u>." <u>Id.</u> at 20 (emphasis added).  Although these references are scattered throughout the charge form, the City is a sophisticated employer and Satterfield referred to race with sufficient repetitiveness that the City should have known that he could be making race-based claims.  The court will thus construe Satterfield's EEOC allegations liberally and find that he exhausted his administrative remedies.  <u>See Balas</u>, 711 F.3d at 408.

**B.    Satterfield's racial discrimination claim must fail because reasonable jurors could not conclude that he has established a <u>prima facie</u> case of discrimination or that the City's justification was pretextual.**

A plaintiff can satisfy his or her burden of proof by producing either direct or indirect evidence of discrimination.  <u>Demuren</u>, 33 F. Supp. 2d at 478-79.  Direct evidence includes such things as discriminatory statements made by a relevant decision maker from which a jury could infer a discriminatory motive.  <u>Taylor v. Va. Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) (<u>en banc</u>).  Indirect proof requires evidence on all of the elements of Plaintiff's <u>prima facie</u> case of discrimination.  Under this theory, Satterfield has the burden to establish (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was performing his position at a level that met the City's legitimate expectations; and (4) that similarly situated employees outside the protected class received more favorable treatment.  <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010); <u>see also</u> <u>Karpel v. Inova Health Sys. Servs.</u>, 134 F.3d 1222, 1228 (4th Cir. 1998).

If Satterfield succeeds in establishing a <u>prima facie</u> case of discrimination, the burden shifts to the City to articulate a legitimate nondiscriminatory reason for termination.  <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004).  If the City meets this burden, Satterfield must then introduce sufficient evidence from which a jury could conclude that the

11

City's stated reason was merely a pretext for its intentional discrimination. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 804 (1973). "[A] plaintiff's <u>prima facie</u> case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 148 (2000). The City's motion demonstrates that on certain elements of Satterfield's claim there are no disputes of material fact and that he is unable to meet this standard.

### 1.     Satterfield cannot establish a **prima facie** case of racial discrimination.

In this case, Satterfield has produced no evidence of direct discrimination, <u>see</u> Sec. Am. Compl. (ECF No. 41), and Satterfield is thus required to establish a <u>prima facie</u> case of discrimination, <u>Coleman</u>, 626 F.3d at 190. Under the first prong, the City acknowledges that, as an African American, Satterfield belongs to a protected class. <u>See</u> Def.'s Mem. (ECF No. 54, at 21-22). However, the City disputes the remaining three elements of Plaintiff's <u>prima facie</u> case, and argues that undisputed facts preclude a finding in Satterfield's favor on each. <u>Id.</u> The court agrees. Specifically, Satterfield has failed to produce evidence[3] that he suffered an adverse employment action, that he was meeting the City's legitimate employment expectations at the time of his termination, or that similarly situated employees outside of his protected class received more favorable treatment. <u>Coleman</u>, 626 F.3d at 190.

---

[3] Local Rules require that the non-movant respond with "a list[ of] all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. R. 56(B). In his Opposition to Summary Judgment, Satterfield simply admitted or denied the City's material facts without supplying the requisite record cites to dispute any contended facts. <u>See</u> Pl.'s Opp'n (ECF No. 56, at 5-14). This is insufficient as a matter of law at the summary judgment stage to create a triable issue of material fact. <u>See</u> <u>Ricci</u>, 557 U.S. at 586.

> **i.** **Satterfield has not suffered an adverse employment action because he resigned from the City.**

An adverse employment action "is a discriminatory act that adversely affects the terms, condition, or benefits of the plaintiff's employment. 'Discharge' from employment is one form of adverse employment action." Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122-23 (4th Cir. 2021) (citing Chang Lim v. Azar, 310 F. Supp. 3d 588, 601 (D. Md. 2018)) (internal citations omitted). A type of employment termination known as "constructive discharge" occurs when

> an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.' When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge.

Green v. Brennan, 136 S. Ct. 1769, 1776-77 (2016) (quoting Penn. State Police v. Suders, 542 U.S. 129, 141 (2004)).  Satterfield alleges that the City constructively discharged him from employment. See Pl.'s Opp'n (ECF No. 56, at 18).

However, Satterfield cannot prove that his discrimination was so severe that he was "compelled to resign." Green, 136 S. Ct. at 1776. For a constructive discharge claim, "the environment must be intolerable." Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1133 (4th Cir. 1995); see also Nnadozie v. Genesis Healthcare Corp., 730 Fed. App'x 151, 162 (4th Cir. 2018) ("[C]onstructive discharge claims are evaluated under an objective 'intolerability' standard."). This "intolerability standard" is even "more stringent than the 'severe and pervasive' standard for hostile work environment claims." Id. Satterfield's working conditions were not intolerable. He testified that his working conditions were not "unpleasant" or "difficult," and he continued to socialize with coworkers until the COVID-19 pandemic. Satterfield Dep. (ECF No. 54-3, at 68). Satterfield's only argument in favor of his constructive discharge is that the City "planned to terminate Plaintiff" and that "impending termination . . . is more severe than difficult

13

or unpleasant working conditions." Pl.'s Opp'n (ECF No. 56, at 18) (quotation marks omitted). Predicting termination—even accurately—does not constitute harassment in the manner required by the constructive discharge doctrine.

Instead, Satterfield simply made a personal decision to resign as an alternative to termination. Voluntary resignation does not constitute an adverse employment action, even if there are pending disciplinary matters. See Ferguson v. Holder, No. 14-cv-1641, 2015 WL 11117148, at *5 (E.D. Va. Feb. 9, 2015); see also Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000). Although Chief Wright planned to terminate Satterfield, the City did not complete the process of terminating Satterfield.[4] Myers Aff. (ECF No. 54-4, ¶ 9). Furthermore, Satterfield knew of the pending charges through the NOC, see Wright Decl. (ECF No. 54-1, ¶¶ 44-46), and the City frequently permitted employees in Satterfield's position to resign, see Myers Aff. (ECF No. 54-4, ¶ 6); Wright Decl. (ECF No. 54-1, ¶ 48). Employees who take that opportunity "are not considered [by the City to be] terminated employees, even if the employee's department planned on terminating" them. Myers Aff. (ECF No. 54-4, ¶ 8). Satterfield executed retirement paperwork, was designated as "retired pending discipline," and reported his retirement to his current employer. Satterfield Dep. (ECF No. 54-3, at 16, 18, 20); Def.'s Mem. Ex. G (ECF No. 54-7, at 6). Therefore, Satterfield's resignation was voluntary, and the undisputed facts establish that Plaintiff cannot satisfy the second prong of his prima facie case.

---

[4] This court does not interpret Satterfield's receipt of the NDA via certified mail on March 9, 2019—over a week after Plaintiff executed his retirement paperwork—as completing the City's termination procedure. See supra note 1. However, even interpreting the facts in the light most favorable to Plaintiff, a dispute about delivery of the NDA does not preclude summary judgment because, even if the court were to find that Satterfield's termination is genuinely disputed, Satterfield has failed to establish the other elements of his prima facie case.

14

**ii.     Satterfield was not meeting the City's legitimate expectations when he separated from the City.**

An employee's job performance must be satisfactory "at the time of the adverse employment action." Thomas v. City of Annapolis, 851 Fed. App'x 341, 346 (4th Cir. 2021) (quoting Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007)).  In assessing whether a claimant's work met legitimate expectations, "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Evans, 80 F.3d at 960-61 (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)).  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Id. at 960.  A plaintiff need not be informed prior to termination that performance is unsatisfactory. See Thomas, 851 Fed. App'x at 346.

Satterfield was not meeting the City's legitimate expectations when he separated from the City.  The evidence shows that Satterfield had been disciplined in four separate incidents that relate to the City's legitimate employment expectations.  Satterfield Dep. (ECF No. 54-3, at 25-27). Additionally, Satterfield's untruthfulness made any continued employment a violation of the City's Policy & Procedure 1.1.5 ("the Policy"):

> Police officers found to have lied intentionally in an official document such as a police report, statement, or affidavit or in an official proceeding such as an internal affairs investigation, administrative hearing, or in court will be terminated. Therefore, officers who are untruthful shall be subject to termination for a first offense.

Def.'s Mem. Ex. J (ECF No. 54-10, at 1) (emphasis added).  The record establishes that Satterfield was untruthful in the 2016 Sham Affidavit, for which he was court sanctioned.  See Satterfield v. City of Chesapeake et al., No. 2:16-cv-665 (E.D. Va. 2018) (ECF No. 89).  The City also found Satterfield lied during an Internal Affairs investigation arising out of the 2016 Sham Affidavit. Wright Decl. (ECF No. 54-1, ¶¶ 36, 41).  Each of these actions falls squarely within the language

15

of the Policy, and the Policy requires termination even for a single offense. See Def.'s Mem. Ex. J (ECF No. 54-10, at 1). Therefore, the Policy prohibited Satterfield's continued employment.

Furthermore, the City's expectations of truthfulness are legitimate. Not only has the City codified these expectations in the Policy, but the Policy identifies a specific business purpose for terminating non-truthful officers: "police officers need to be believable. To be believable, police officers must be truthful." Id. The Commonwealth's Attorney must disclose all officer credibility issues to criminal defendants under Brady and Giglio because untruthful officers can be easily impeached, and thus their credibility constitutes potentially exculpatory evidence. See Wright Aff. (ECF No. 54-1, ¶¶ 26, 38). CCA Parr has testified that the court's sanctioning of Satterfield for the 2016 Sham Affidavit was sufficient, even without Chief Wright's report, to place Satterfield on the Giglio/Brady List. Parr Dep. (ECF No. 54-2, at 47-48). Therefore, because Satterfield's untruthfulness in the 2016 Sham Affidavit and the subsequent investigation constituted a credibility issue, his continued employment threatened the City's ability to perform its law-keeping function.

In opposing summary judgment on this element, Satterfield places great weight on his positive employment evaluations. Pl.'s Opp'n (ECF No. 56, at 19); see also Pl.'s Opp'n to Def.'s Mot. to Dismiss (ECF No. 23, at 7) (citing 2013-2019 evaluation scores); Pl.'s Opp'n Ex. E (ECF No. 56-5, at 1) (scoring 4.87/5.00 in January 2019). Judge Allen relied in part on these evaluations to advance Satterfield's discrimination claim in the First Amended Complaint after the City's motion to dismiss. Order (ECF No. 30, at 20-21). However, the City has now produced evidence that Satterfield's untruthfulness destroyed his utility as an employee. See, e.g., Wright Dep. (ECF No. 54-11, at 48) (stating that an officer who "cannot testify in court" can have no "administrative duties"); cf. Pl.'s Opp'n Ex. C (ECF No. 56-3, at 1) ("Officer integrity underlies every criminal

16

investigation and prosecution.  It is a critical component to every case.").  Again, it is the City's "perception" of Satterfield that "is relevant," and the City clearly believed that Satterfield could no longer perform his job.  Evans, 80 F.3d at 960-61 (quoting Smith, 618 F.2d at 1067).  The fact that Satterfield's performance evaluations do not explicitly reflect this belief does not render the City's assessment suspect.  Cf. Thomas, 851 Fed. App'x at 346.  Satterfield's disciplinary incidents similarly undercut the helpfulness of his performance evaluations.  Satterfield Dep. (ECF No. 54-3, at 25-27).  Therefore, in responding to the City's record on summary judgment, Satterfield needed to produce evidence responsive to these new claims—not rely again upon assertions of general competence.  Because Plaintiff wholly failed to meet this burden, Satterfield has not established the third prong of his prima facie case.

### iii.    The City has adequately distinguished all of Satterfield's proposed comparators.

But even if Satterfield could establish that he was meeting the City's legitimate expectations when he retired, the City has sufficiently distinguished his named comparators.  When plaintiffs "base[] their allegations completely upon a comparison to an employee from a non-protected class, . . . the validity of their prima facie case depends upon whether that comparator is indeed similarly situated."  Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010).  While comparators need not "be precisely equivalent to the plaintiff," Witherspoon v. Brennan, 449 F. Supp. 3d 491, 500 (D. Md. 2020), comparators must be "similar in all relevant respects," including having "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," Haywood, 387 Fed. App'x at 359 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

17

Satterfield has named Officer Franklin Chappell and Officer Gregory Prieur as possible comparators.[5] Pl.'s Opp'n (ECF No. 56, at 18).  As Chappell and Prieur are both Caucasian, they fall outside Plaintiff's protected class.  See Sec. Am. Compl. (ECF No. 41, at 2).  Chappell and Prieur are the only two officers on the Giglio/Brady List currently permitted to testify.  Parr Dep. (ECF No. 54-2, at 21-22).  In arguing that Chappell and Prieur are appropriate comparators, Satterfield contends that they "enjoy[] the benefit of having their inconsistent statements distinguished from intentional false or materially inaccurate statements or reports," and states that the City "chose not to give Plaintiff the benefit of the doubt as it did his comparators."  Pl.'s Opp'n (ECF No. 56, at 18).  But it was the Commonwealth's Attorney, not the City, that classified the officers' "behavior . . . [as] more of a misunderstanding of the law and a training issue, not a veracity issue."  Parr Dep. (ECF No. 54-2, at 22).  Plaintiff has not provided any evidence to contradict CCA Parr's evaluation.  If Chappell and Prieur were not dishonest, then this constitutes a "differentiating or mitigating circumstance[] that would distinguish their conduct."  Haywood, 387 Fed. App'x at 359 (quoting Mitchell, 964 F.2d at 583).  To compare himself to Chappell and Prieur after CCA Parr's evaluation, Satterfield must produce evidence that their behavior was dishonest like his own.  See id.  Plaintiff has failed to do so, and his cursory and unattributed suggestion that "Defendant chose not to give Plaintiff the benefit of the doubt" is insufficient to survive summary judgment.  Pl.'s Opp'n (ECF No. 56, at 18).

Satterfield cannot reasonably dispute that the Commonwealth's Attorney evaluation of each officer's veracity—Satterfield as well as Chappell and Prieur—was independent of the City.

---

[5] Plaintiff also named Officer Daniel Smith as a potential comparator, but the City terminated Smith after a substantiated charge of untruthfulness and CCA Parr's determination that he could not testify. Wright Decl. (ECF No. 54-1, at 14).  A grievance panel forced Chief Wright to reinstate Smith, but Smith was denied any police powers (e.g., gun, badge).  Id.; Wright Dep. (ECF No. 54-11, at 48-49).  Smith was later terminated a second time for lying again.  Wright Dep. (ECF No. 54-11, at 49).  Because Defendant originally terminated Smith (like Plaintiff) after a substantiated charge of untruthfulness, Smith is not a helpful comparator.

On this point, Satterfield argues that "the independence between the City and the Sheriff's Office is debatable" due to shared resources. Pl.'s Opp'n (ECF No. 56, at 12-13). However, the independence of the Office of the Commonwealth's Attorney is not debatable. Chief Wright reported both Chappell and Prieur to CCA Parr, just like he reported Satterfield. Wright Aff. (ECF No. 54-1, ¶ 29). CCA Parr then independently "distinguish[ed]" Chappell's and Prieur's statements "from intentional false or materially inaccurate statements or reports." Pl.'s Opp'n (ECF No. 56, at 18); see Parr Dep. (ECF No. 54-2, at 22). The court cannot impute CCA Parr's determination to the City or interpret her actions as discriminatory in the context of this claim.

Plaintiff clarifies that he does not object to his placement on the Brady/Giglio List, but rather to the City's "unequal treatment" of officers placed on the list. Pl.'s Opp'n (ECF No. 56, at 20). However, as explained above, the list is a flagging process within the case management system of the Office of the Commonwealth's Attorney. Parr Dep. (ECF No. 54-2, at 10-11). Only the Commonwealth's Attorney can interpret the Office's system, and CCA Parr has testified that she flagged Chappell and Prieur only out of an "abundance of caution." Id. at 22. Therefore, the City never terminated Chappell and Prieur because, unlike Satterfield, Chappell and Prieur did not trigger the Policy: CCA Parr removed them from its scope. As such, the court cannot compare Satterfield to Chappell and Prieur because they are not "similar in all relevant respects" and there are clear "differentiating or mitigating circumstances . . . distinguish[ing] their conduct" from Satterfield's. Haywood, 387 Fed. App'x at 359 (quoting Mitchell, 964 F.2d at 583). Therefore, Plaintiff has not established the last prong of his prima facie case.

## 2. There is no evidence that the City's justification for terminating Satterfield is pretextual.

Establishing a prima facie case of discrimination is only the first step under the applicable burden-shifting standard. To succeed, Satterfield must also introduce sufficient evidence from

which a jury could conclude that the City's stated reason was merely a pretext for its intentional discrimination. McDonnell Douglas Corp., 411 U.S. at 804. A plaintiff must provide at least circumstantial evidence of pretext to survive summary judgment. See E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852-53, 857 (4th Cir. 2001). "A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" Holland, 487 F.3d at 214 (quoting Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981)).

Satterfield's evidence of pretext amounts only to the argument that "Defendant's treatment of officers on the Brady list [is] inconsistent," reiterating that Chappell and Prieur were not terminated. Pl.'s Opp'n (ECF No. 56, at 21). However, as discussed at length above, the City has distinguished its treatment of Chappell and Prieur based on the independent evaluation of the Commonwealth's Attorney. Chief Wright and other City employees have consistently maintained that they recommended termination because of Satterfield's untruthfulness in the 2016 Sham Affidavit and subsequent investigation. See Def.'s Mem. Ex. A (ECF No. 54-1, at 119-23). Chief Wright has also terminated other officers who engaged in conduct like Plaintiff's, Wright Dep. (ECF No. 54-11, at 47-48), and a justification applied to other similarly situated employees is not "unworthy of credence," Holland, 487 F.3d at 214 (quoting Burdine, 450 U.S. at 256).

Lastly, the court cannot question the reasonableness of the City's justification, only its legitimacy. The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning, 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997)). The court evaluates only

> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason

20

was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

Id. (quoting Giannopoulos, 109 F.3d at 410-11).   The City has submitted evidence that substantiated untruthfulness was a common justification for termination and that impeachable officers have limited employment value. See, e.g., Def.'s Mem. Ex. J (ECF No. 54-10, at 1); Wright Dep. (ECF No. 54-11, at 48-49).   Further, the evidence shows that Satterfield was terminated for this reason. See, e.g., Pl.'s Opp'n Ex. B (ECF No. 56-2) (listing in the NDA that Satterfield would be terminated based on the Policy for credibility issues).   Satterfield has failed to rebut this justification with admissible evidence, as is his burden at summary judgment. See E.D. Va. Loc. R. 56(B).   Therefore, Satterfield's discrimination claim must fail.

**C.**   **Satterfield's retaliation claim must fail because Satterfield did not engage in a temporally proximate protected activity and undisputed facts establish that the City did not retaliate against him.**

In addition to prohibiting discrimination, Title VII's anti-retaliation provision was enacted to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63 (2006); see also 42 U.S.C. § 2000e-3(a).   To survive summary judgment on his retaliation claim, Satterfield must demonstrate three elements: (1) that he engaged in protected activity; (2) that his employer took a materially adverse action against him; and (3) that there was a causal link between these two events. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)); Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 825-26 (E.D. Va. 2016) (noting that "a 'materially adverse action,' not 'adverse employment action,' is the proper articulation of the adversity element in retaliation claims"), motion to certify appeal denied, No.

3:15cv569, 2016 WL 3922053 (E.D. Va. July 20, 2016).  Because Satterfield cannot establish any of these elements, his retaliation claim also fails.

### 1.    Satterfield cannot identify a protected activity that is temporally proximate to his termination and to which the City retaliated.

Satterfield cannot demonstrate that he "engaged in a protected activity" that caused his termination.  Boyer-Liberto, 786 F.3d at 281 (quoting Navy Fed. Credit Union, 424 F.3d at 405-06).  Protected activity includes any activity opposing a practice made unlawful under Title VII. DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)).  Protected activity is interpreted broadly and "protect[s] [an employee] when she opposes not only . . . employment actions actually unlawful under Title VII but also employment actions [the employee] reasonably believes to be unlawful."  Id. (quoting Boyer-Liberto, 786 F.3d at 282) (internal quotation marks omitted).  Although Plaintiff engaged in several protected activities, none of them are temporally proximate or otherwise causally linked to his termination.

Because "an employer cannot take action because of a factor of which it is unaware," the key inquiry is when the employer became aware of the employee's engagement in a protected activity.  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).  To "show a causal link, . . . an employer's knowledge of the protected activity and the adverse employment action that follows [must be] very closely related in time."  Emami v. Bolden, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) (citing Pettis v. Nottoway Cty. Sch. Bd., 592 Fed. App'x 158, 161 (4th Cir. 2014)).  A ten-week period is sufficient, but a three-month period is too long to establish causation.  Id. (citing cases); see also Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) (six months negates causation); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (thirteen months negates causation); Dowe, 145 F.3d at 657 (three years negates causation).

In dismissing Satterfield's claim of retaliation in his First Amended Complaint, this court determined that Plaintiff's April 2015 EEOC complaint did not establish causation. Order (ECF No. 30, at 26) ("The temporal proximity between Mr. Satterfield's protected activity and termination ranges of the span of multiple years."). In his Second Amended Complaint, Satterfield identifies two additional protected activities: (1) his filing of the 2016 Sham Affidavit as a "substantive protected activity in continuing to prosecute his first lawsuit," Sec. Am. Compl. (ECF No. 41, at 11); and (2) his request for an investigation of his supervisor, Sergeant Jack Bider, for untruthfulness, id. at 15. However, the court does not need to individually address these additional activities because Satterfield specifically pled in his Second Amended Complaint that he resigned "almost seven (7) months past his last proactive, substantive protected activity." Id. (emphasis added). Seven months negates causation through temporal proximity as a matter of law. See Hooven-Lewis, 249 F.3d at 278. Lastly, as Defendant points out, the 2016 Sham Affidavit is an extension of the same protected activity in which Plaintiff engaged in 2015 and of which Defendant had been aware for years. See Def.'s Mem. (ECF No. 54, at 28-29).

Satterfield's "continuing violation" argument also misstates the law.[6] See Pl.'s Opp'n (ECF No. 56, at 20). "In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)) (quotation marks omitted). In Lettieri v. Equant Inc., the Fourth Circuit found that "intervening events . . . occur[ing] regularly after [the

---

[6] Plaintiff calls this causation argument the "continuing violation doctrine," Pl.'s Opp'n (ECF No. 56, at 20), but the "continuing violation" doctrine technically applies only to the 300-day limitations period for filing an administrative charge with the EEOC, see Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 139 (4th Cir. 2007).

plaintiff's] complaint" could prove causation.   Id. at 651 (describing how the defendants manipulated the plaintiff's employment responsibilities to eliminate her position as "redundant").

However, Satterfield's Opposition to Summary Judgment fails to identify a chain of retaliatory events;[7] rather, he states that "Plaintiff's EEOC form and narrative clearly put Defendant on notice that Plaintiff found the City's continuous actions of discrimination and retaliation 'both harmful and stressful.'" Pl.'s Opp'n (ECF No. 56, at 20).  Setting aside the fact that Plaintiff resigned before filing the EEOC charge form, see Pl.'s Opp'n Ex. D (ECF No. 56-4, at 1), Satterfield's allegations of a retaliatory chain of conduct is insufficient at the summary judgment stage, see E.D. Va. Loc. R. 56(B).  Instead, Satterfield has the burden to articulate, with record citations, that causal chain.  Id.  Because Satterfield has failed to even identify these events, much less support them with citation to admissible evidence in opposing summary judgment, he has not established causation.

### 2.   Satterfield cannot demonstrate that the City took a materially adverse action against him because he was not terminated.

Finally, as with Satterfield's discrimination claim, Plaintiff must prove that the City acted adversely against him. Boyer-Liberto, 786 F.3d at 281 (quoting Navy Fed. Credit Union, 424 F.3d at 405-06).  Termination from employment is classic adverse action.  See Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 830 (E.D. Va. 2016).  Satterfield again relies on his separation from employment as the City's chief retaliatory act.  See Pl.'s Opp'n (ECF No. 56, at 18-19).  However, as discussed at length above, Satterfield resigned from the City.  See Satterfield Dep. (ECF No. 54-3, at 16, 18, 20); Def.'s Mem. Ex. G (ECF No. 54-7, at 6).  Even if Satterfield only resigned

---

[7] Plaintiff's Second Amended Complaint attempted to identify an "antagonistic pattern of retaliatory conduct." Sec. Am. Compl. (ECF No. 41, at 11-15). However, Satterfield's Opposition to Summary Judgment was not accompanied by sworn testimony, declaration, or exhibits that supported the existence of such a chain of conduct, and the Opposition itself does not articulate this pattern with sufficient clarity.

because he accurately predicted his coming termination, Satterfield's resignation was voluntary. Without a "materially adverse action" against him, Satterfield's retaliation claim must fail as a matter of law. <u>Boyer-Liberto</u>, 786 F.3d at 281 (quoting <u>Navy Fed. Credit Union</u>, 424 F.3d at 405-06).

## V.    **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, ECF No. 53.

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 14, 2021